UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
  In re                                                     :
                                                            :      20 Misc. 300 (LGS)
  Subpoena to The Nielsen Company (US), LLC                 :
                                                            :      <u>ORDER</u>
                                                            :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

      WHEREAS, Plaintiffs in the underlying litigation *Maeda et al. v. Kennedy Endeavors, Inc.*, 18 Civ. No. 459 (D. Haw.) move to compel non-party The Nielsen Company (US), LLC ("Nielsen") to produce documents in response to Plaintiffs' subpoena served April 13, 2020. Nielsen opposes.

      WHEREAS, the underlying litigation is a putative class action claiming consumers paid a price premium for Defendant Kennedy Endeavors, Inc.'s Hawaiian chips and onion ring products (the "Hawaiian Products") based on false and misleading representations that the Hawaiian Products are made in Hawaii using local ingredients.

      WHEREAS, Plaintiffs seek from Nielsen "[a]ll POS [Point of Sale] and consumer retail sales data (on no less than a quarterly basis) for the [Hawaiian] Products" sold in Hawaii for the last eight years and (2) "all POS and consumer retail sales data (on no less than a quarterly basis) for the entire Snack Food Industry" in Hawaii for the last eight years (collectively, the "Scanner Data"). Plaintiffs seek the Scanner Data in order to calculate the alleged premium customers paid for the Hawaiian Products in support of their damages model for their upcoming motion for class certification.

      WHEREAS, Nielsen is a market research firm in the business of collecting and compiling sales and other data from retailers and other sources and analyzing it to create copyrighted

1

market reports.  Nielsen collects raw POS data from retailers subject to license agreements whereby the retailers retain ownership of such data, which is often treated as confidential. Nielsen cleans, processes and analyzes such raw POS data using proprietary algorithms and methodologies to create its primary product -- market research information, "that is, *opinions* about the sales of the consumer products tracked, across major metropolitan market geographies."  Nielsen does not retain raw POS data for more than ninety calendar days.

WHEREAS, a party may move to compel compliance with a subpoena per Fed. R. Civ. P. 45(d)(2)(B)(i), and a district court has an "obligation to quash, on timely motion, any subpoena that 'subjects a person to undue burden' or requires the 'disclosure of privileged or other protected matter.'"  *Washington Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126, 137 (2d Cir. 2020) (quoting Fed. R. Civ. P. 45(d)(3)(A)).  A district court may also decline to enforce a subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information."  Fed. R. Civ. P. 45(d)(3)(B)(i); *see also City of Almaty, Kazakhstan v. Ablyazov*, Civ. No. 5345, 2020 WL 1130670, at *1 (S.D.N.Y. Mar. 9, 2020) ("The Court may quash a subpoena if it requires disclosure of trade secrets or other confidential information."). "Where a subpoena seeks discovery from a non-party, the district court may consider factors such as the expense or inconvenience that compliance would cause.  The trial court has broad discretion to determine whether a subpoena imposes an undue burden."  *Amphenol Corp. v. Fractus, S.A.*, No. 19 Misc. 160, 2019 WL 2521300, at *6 (S.D.N.Y. June 19, 2019) (citations omitted).

WHEREAS, the subpoena seeks raw POS data that Nielsen has collected from selected sources prior to application of its proprietary data analysis methods or creation of the resulting

analyses that are Nielsen's primary product.  As such, contrary to Nielsen's protestations, Plaintiffs do not seek Nielsen's trade secrets or stock-in-trade.

WHEREAS, the protective order in this case would adequately safeguard the Scanner Data by strictly limiting its disclosure, and Nielsen does not specifically address how it would be harmed if Plaintiffs purchased the Scanner Data subject to the protective order.  Instead, Nielsen generally alleges that it would be "harmed in its business were litigants able to use Nielsen's data against the very businesses to whom Nielsen markets these data and reports."  That argument is unpersuasive because, aside from that general statement, Nielsen provides no evidence that Defendant is a client, that it markets its services to Defendant or that disclosure of the Scanner Data would otherwise harm Nielsen.  Instead, in its supplemental response to the Court's request that it identify specific harms arising from disclosure of the raw POS data subject to the protective order in this case, Nielsen states that there is "a danger that Nielsen's cooperating retailers . . . will no longer be willing to provide Nielsen with their point of sale data," thus leaving Nielsen "unable to conduct its main business" of producing analyses from raw point of sale data.  From that danger, Nielsen extrapolates that it "will soon be inundated with similar subpoenas in other cases," thus taking employee time away from their primary tasks, and notes that it currently receives four subpoenas a month, on average.  These arguments are unpersuasive because, in addition to the speculative nature of the posited harms, they do not address the fact that Plaintiffs are willing to pay for the Scanner Data, and that the dissemination and use of that data will be strictly limited by the protective order in this case.

WHEREAS, the subpoena seeks information that Nielsen does not have readily available, as Nielsen would have to formulate a database query for raw POS data for the Hawaiian Products and the Hawaiian snack food industry.  As such, the subpoena imposes a burden on Nielsen.

Nielsen provides no evidence that its burden to formulate and execute such a query on its existing dataset is heavy.  Instead, in response to the court's directive that it provide an estimate of "the amount of time it would take to formulate and execute a query on Nielsen's database for the Scanner Data" Nielsen notes that it does not maintain enough data to generate a "statistically representative measure" of quarterly sales for the Hawaiian snack food industry.  Nielsen then estimates that it would cost several hundred thousand dollars and take several months to approach various retail operators in Hawaii, negotiate cooperation agreements for a statistically representative measure of such POS data and then obtain, clean and process such data.  Putting aside the fact that Plaintiffs do not seek cleaned or processed data, the subpoena merely seeks "all documents reasonably available to [Nielsen] or subject to [Nielsen's] custody or control."  It does not direct Nielsen to undertake a comprehensive Hawaiian data-gathering operation.  And Nielsen acknowledges that it would only take "a number of hours for Nielsen analysts to design and execute" the query for the requested information now existing in its database -- raw POS data from the last ninety days.  As such, Nielsen does not face an undue burden in complying with the subpoena's request for Scanner Data.  Accordingly, it is hereby

**ORDERED** that by **October 23, 2020**, the parties shall meet and confer in good faith to arrive at a mutually-agreeable price for the Scanner Data and shall file a <u>joint</u> letter describing such efforts.  By **October 29, 2020**, Nielsen shall provide the Scanner Data then in its possession to Plaintiffs, subject to the protective order in this case.

Dated:  October 16, 2020
          New York, New York

LORNA G. SCHOFIELD
**UNITED STATES DISTRICT JUDGE**